# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
July 31, 2023
Lyle W. Cayce
Clerk

No. 22-40350

---

Charles Sheffield; Pedestrian Beach, L.L.C.,

*Plaintiffs—Appellants*,

versus

Dawn Buckingham, *in her official capacity as Commissioner of the Texas General Land Office*; Ken Paxton, *in his official capacity as Attorney General for the State of Texas*,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:21-CV-122

---

Before Graves, Ho, and Duncan, *Circuit Judges*.

Per Curiam:[*]

    Appellants Charles Sheffield and Pedestrian Beach, LLC (the "Owners") own beachfront parcels in Surfside Beach, Texas. The Owners use their beachfront properties for vacation rentals and for personal and family use. The Owners' lots and homes are located landward of the mean higher high tide line. After tropical systems battered the Texas coast during

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

the summer of 2020, the General Land Office ("GLO") Commissioner issued a temporary order enlarging areas of the public beach in the State, which the Owners claim is unconstitutional and infringe on their property rights. The district court, however, declined to issue a preliminary injunction. The Owners now ask this court to reverse the district court's denial of a preliminary injunction and enjoin Texas from enforcing the temporary order.

## Background

Texas owns "the water and the beds and shores of the Gulf of Mexico" between the mean low tide and the mean high tide line, which mark the average of low- and high-tide marks over an 18.6-year period. TEX. NAT. RES. CODE § 11.012(c); *Luttes v. State*, 324 S.W.2d 167, 187 (Tex. 1958). Texas may obtain access to the dry beach (beach inward from the hightide line) for the benefit of the public through easements established by "prescription or dedication," *Severance v. Patterson*, 370 S.W.3d 705, 711 (Tex. 2012), or where a right of public use exists "by virtue of continuous right in the public . . ." TEX. NAT. RES. CODE §§ 61.011(a). Although Texas need not "re-establish easements each time boundaries move due to gradual and imperceptible changes to the coastal landscape," Texas' easements do not automatically "roll" inland after abrupt changes in topography caused by events like hurricanes and tropical storms. *Severance*, 370 S.W.3d at 708.

In 2013, the Texas Legislature amended the Open Beaches Act to permit the GLO to "suspend action on conducting a line of vegetation determination for a period of up to three years from the date the order is issued if the Commissioner determines that the line of vegetation was obliterated as a result of a meteorological event." TEX. NAT. RES. CODE § 61.0171(a). During the summer of 2020, Hurricane Laura and tropical storm Beta struck the Texas Gulf Coast. Because of the damage to the beach caused

by these storms, the GLO Commissioner issued an order under section 61.0171 titled "Temporary Order Suspending Determination of the Line of Vegetation and Suspending Enforcement of Certain Encroachments on the Public Beach." The order provided that "[a]ction on conducting a line of vegetation determination is suspended for a period of two years from the date of this Order within the Village of Surfside Beach city limits and from the western terminus of the Seawall west to Thirteen Mile Road on Galveston Island." The order provided that for "permitting purposes, local governments shall use 200 feet landward of mean low tide as the [line of vegetation, or 'LOV'], as applicable depending on the local government's plan, for two years."

This new 200-foot beach area allegedly covers part or all of the Owners' properties. This means, according to the Owners, that "members of the public can now stand, sit, and otherwise station themselves on areas immediately around [the Owners'] homes, near entry ways and windows. This limits the homes' privacy, safety and raises serious liability concerns." The Owners also allege that this constitutes an illegal taking.

### Procedural History

On May 24, 2021, the Owners filed a complaint against the Commissioner and one other, now dismissed, Texas official, in their official capacities. On June 18, 2021, the Owners filed a First Amended Complaint, the operative complaint, alleging Fifth Amendment, Fourth Amendment, and procedural and substantive due process claims, and on July 24, 2021, the Owners filed a motion for a preliminary injunction. On August 9, 2021, the Commissioner filed a motion to dismiss the complaint. On May 24, 2022, the district court denied the Commissioner's motion to dismiss the Fifth Amendment, Fourth Amendment, and procedural due process claims. The

district court, however, dismissed the Owners' substantive due process claims and denied the Owners' motion for a preliminary injunction.

The Owners appealed, requesting that this court reverse and remand for entry of an order granting a preliminary injunction. On August 3, 2022, after Appellants filed their brief, the Commissioner rescinded the temporary order.

## Discussion

We review the district court's decision to grant or deny a preliminary injunction for abuse of discretion. *Anderson v. Jackson*, 556 F.3d 351, 355 (5th Cir. 2009). A "decision based on erroneous legal principles is reviewed de novo." *Id.* "Only under 'extraordinary circumstances' will we reverse the denial of a preliminary injunction." *Id.* at 355–56 (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir.1989)).

### 1. The case is moot because the Commissioner rescinded the temporary order

On August 3, 2022, the Commissioner rescinded the temporary order because it fulfilled its purpose: allowing for the "natural recovery and stabilization of the beach system . . . ." Therefore, the Owners' properties are no longer subject to the temporary order. "Mootness is one of the doctrines that ensures federal courts are only deciding live cases or controversies." *Spell v. Edwards*, 962 F.3d 175, 178–79 (5th Cir. 2020). "A matter is moot 'when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Id.* at 179 (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). "It makes sense, then, that a case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed." *Id.* This is because "[o]nce the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do." *Id.*

No. 22-40350

But "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). This is because "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* "To show that such a change of heart is not mere litigation posturing, a defendant asserting mootness must demonstrate 'that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Spell*, 962 F.3d at 179 (5th Cir. 2020) (quoting *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020)); *see also Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018) ("Essentially, the goal is to determine whether the defendant's actions are 'litigation posturing' or whether the controversy is actually extinguished.").

Here, "there is nothing injuring the [Owners] and, consequently, nothing for the court to do." *Spell*, 962 F.3d at 179. There is no order to enjoin. On that basis alone, this case is moot unless the Commissioner's behavior is reasonably likely to recur or was ended because of litigation posturing.

### a. The temporary order is unlikely to recur, and the alleged future harms are speculative

As the Owners contend, "since the statutory authorization for the Order, and all other relevant factors that gave rise to its issuance remain unchanged, this dispute is almost certain to recur." Additionally, the Owners argue that the "Commissioner has not offered any evidence or authority that proves his office will not issue such an order in the future." This, however, is a generalized complaint about the statutory authority underpinning the Open Beaches Act more broadly, and their suit is not, and has never been, a facial attack on the legality of a state statute. They cannot raise an entirely new claim for the first time on appeal and in response to a motion to dismiss.

The Owners challenged a specific temporary order that was issued in response to a unique situation where two powerful storms hit the Village of Surfside Beach and Galveston Island. While tropical storms on the Gulf Coast are not necessarily rare, it is mere speculation that tropical systems will impact the first line of natural vegetation and the Commissioner issues a similar order affecting these specific homeowners. *See, e.g.*, *Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020) ("[I]t is remote, and indeed unrealistically speculative, that these defendants will ever again expose the plaintiffs to the claimed injury that prompted this lawsuit.").

The Owners also contend that this case is not moot because "the Order continues to affect the marketability and value of the Owners' properties despite its recission." The Owners argue that "[t]he existence of the Order in those records puts prospective buyers of the Owners' properties on notice that state officials can, and are likely to, declare that a public beach easement extends to private land lying within 200 feet inland of MLT in Surfside Beach, if a tropical storm hits." But this is not unique to these Owners. All properties near the beachfront in Texas could theoretically be subjected to similar actions. Because of this, the harms they complain of are not individualized or unique, and this theory cannot save their claims from dismissal due to mootness.

### b. The temporary order did not end because of litigation posturing

"[T]he goal is to determine whether the defendant's actions are 'litigation posturing' or whether the controversy is actually extinguished." *Yarls*, 905 F.3d at 910. "[A] statute that expires by its own terms does not implicate [litigation postering] concerns. Why? Because its lapse was predetermined and thus not a response to litigation. So unlike a postsuit repeal that might not moot a case, a law's automatic expiration does." *Spell*, 962 F.3d at 179. The temporary order suspending determination of the LOV

provided that it would "expire two years from the date the Order is issued." Texas rescinded the order just over 16 months later. This analysis is slightly complicated by Texas' decision to rescind the temporary order early, but, according to the temporary order, "a primary purpose of the temporary suspension of enforcement is to allow natural recovery and stabilization of the beach system . . . ." This goal, according to Texas, was achieved prior to the two-year mark. It would make little sense to have Texas leave the temporary order in place beyond its usefulness and purpose—laid out explicitly in the order—simply so a court could find that the case is moot. In effect, this order ended by its own terms when Texas determined that it achieved its written purpose.

The presumption of truth to Texas' statements that the temporary order served its usefulness—and did not end because of litigation posturing—is warranted. This is because "[g]overnment officials 'in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties.'" *Yarls*, 905 F.3d at 910–11 (5th Cir. 2018) (quoting *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009)). "Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing." *Sossamon*, 560 F.3d at 325. Treating Texas' position and its representations to the court with "some solicitude" is warranted. *Id.*

### c. The Owners' claim does not fall under the capable of repetition, yet evading review doctrine

This claim is also not saved from mootness by the "capable of repetition, yet evading review" doctrine. This exception to general mootness principles has two prongs: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected

to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149, (1975). "Under the second prong, the party invoking jurisdiction must show a 'demonstrated probability' or 'reasonable expectation,' not merely a 'theoretical possibility,' that it will be subject to the same government action." *Lopez v. City of Houston*, 617 F.3d 336, 340 (5th Cir. 2010) (quoting *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010)). The Owners bear the burden of proving both prongs. *Id.*

Here, for the first prong, the duration of the temporary order allowed time for the Owners to fully litigate this case at the trial court. As for the second prong, "merely showing that the government will 'have an opportunity to act in the same allegedly unlawful manner in the future' is not enough to satisfy the second prong of the exception without a reasonable expectation that the government *will* act in that manner." *Id.* at 341 (quoting *Libertarian Party*, 595 F.3d at 217). The Owners fail to meet this burden.

## Conclusion

This case is DISMISSED as moot.

No. 22-40350

James C. Ho, *Circuit Judge*, dissenting:

I respectfully dissent. First, with respect to the Commissioner's assertion of mootness, the timing is suspicious. The Commissioner did not rescind the challenged order until shortly before her brief in this appeal was due. Moreover, this timing was not pre-ordained—in fact, it contradicted the original terms of the order. So I have real doubts as to whether the government's actions mooting this case were sincere or strategic—a question we must ask under a faithful application of the doctrine of voluntary cessation. *See, e.g.*, *U.S. Navy SEALs 1-26 v. Biden*, _ F.4th _, _ (5th Cir. 2023) (Ho, J., dissenting). The majority would presume the Commissioner's good faith. I understand and wish I could agree with my distinguished colleagues. But the circumstances give me pause. What's more, Plaintiffs plausibly contend that, no matter what its expiration date, the order will only continue to adversely impact the marketability and value of their properties.

Turning to the denial of preliminary injunctive relief, I disagree with the district court's conclusion that Plaintiffs lack irreparable injury. Plaintiffs demonstrate irreparable injury to the extent that sovereign immunity would preclude them from recovering any monetary damages caused by Defendants in this matter. *See, e.g.*, *Clarke v. CFTC*, _ F.4th _, _ (5th Cir. 2023) (citing *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021)). So I would reverse the denial of preliminary injunctive relief and remand for further proceedings accordingly.

"The Founders recognized that the protection of private property is indispensable to the promotion of individual freedom. As John Adams tersely put it, '[p]roperty must be secured, or liberty cannot exist.'" *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) (quoting *Discourses on Davila, in* 6 Works of John Adams 280 (C. Adams ed. 1851)). Respect for private property leads me to conclude that we should reverse and remand.